1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10   JAMES F. GOSSETT,

11                      Plaintiff,            CASE NO. 11cv5245-RBL-JRC

12          v.                                REPORT AND
                                              RECOMMENDATION ON
13   MICHAEL J. ASTRUE, Commissioner          PLAINTIFF'S COMPLAINT
     of the Social Security Administration,
14                                            Noting Date: April 13, 2012

15                      Defendant.

16

17          This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by <u>Mathews, Secretary of  H.E.W. v. Weber</u>, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed. (<u>See</u> ECF Nos. 17, 18, 21).

21          The ALJ failed to provide a sufficiently detailed and thorough review of the facts

22   and conflicting evidence in support of his failure to credit fully the opinions of examining

23   doctors. The ALJ also failed to provide clear and convincing reasons in support of his

24

failure to credit fully plaintiff's credibility and testimony. Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

<u>BACKGROUND</u>

Plaintiff, JAMES F. GOSSETT, was thirty-five years old on his alleged date of disability onset of December 15, 2006 (Tr. 148). Plaintiff testified that he had special educational assistance in high school and graduated at eighteen or nineteen years of age (Tr. 37). As indicated by Dr. Jeff Bremer, Ph.D., ("Dr. Bremer"), plaintiff's case service notes suggested "possible organic brain disorder, and learning disabilities, secondary to falling down some stairs when he was 14" (Tr. 242).

Plaintiff had regular earnings between 1989 and 2008 (Tr. 155-56). He held various temporary jobs and jobs in the commercial kitchen, such as dishwasher and prep cook (Tr. 169). Plaintiff testified that he was told at a previous job by his supervisor that his work was slow (Tr. 38). He testified that he was let go from his subsequent job because he was having pain and could not do his tasks (Tr. 39-40). He testified that he left some of his previous jobs because of "stress, pain, lifting too much," and that he was terminated "sometimes" from jobs because of difficulties with either a co-worker or a supervisor (Tr. 40, 53-54).

Plaintiff testified that since December 15, 2006, he had some problems with his neck and upper spine, where he would wake up with major headaches about two or three times a week on occasion (Tr. 41). He testified that he sometimes dropped things with his right hand and has had surgery on his left hand (Tr. 42-43). Plaintiff testified that

although his left hand was better after the surgery, it was still numb and he still experienced shocks (Tr. 44).

Plaintiff testified that he experienced lumbar back pain (id.). He testified that the pain sometimes travelled up or down from his lumbar spine (Tr. 44-45). Plaintiff testified that although he takes aspirin when his pain is bad, he is unable to take prescription medications as he cannot afford them (Tr. 45). The ALJ found that plaintiff had the following severe impairments: "degenerative disc disease in the cervical, thoracic, and lumbar spine; mathematics disorder; reading disorder; disorder of written expression; learning disorder; phonological disorder; and, obesity" (Tr. 16).

PROCEDURAL HISTORY

Plaintiff filed applications for Social Security and Supplemental Security Income disability benefits on January 30, 2007 (Tr. 14, 73-74,141-147, 148-54). His applications were denied initially and following reconsideration (Tr. 80-83, 86-90). His requested hearing was held before Administrative Law Judge Paul W. Schwarz ("the ALJ") on September 23, 2009 (Tr. 14, 33-72). On November 6, 2009, the ALJ issued a decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 11-28).

On January 28, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. Plaintiff attached a complaint seeking judicial review of the ALJ's written decision to his motion for leave to proceed *in forma pauperis* on March 29, 2011 (see ECF Nos. 1, 3). On August 17, 2011, defendant filed the sealed

administrative transcript regarding this matter ("Tr.") (see ECF No. 12). In his Opening Brief, plaintiff challenges the ALJ's review of (1) the medical evidence; (2) plaintiff's credibility and testimony; (3) the lay evidence; and, (4) plaintiff's residual functional capacity (see ECF No. 17, p. 2). Plaintiff also contends that the ALJ erred in his step four analysis, as it was based on an erroneous residual functional capacity determination (id. at pp. 2-3). Plaintiff requests reversal and remand of this matter to the Commissioner for a *de novo* hearing and new decision (id. at p. 3).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the

district court, is required to provide specific reasons for rejecting lay testimony." <u>Stout</u>, <u>supra</u>, 454 F.3d at 1054 (*citing* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. <u>Stout</u>, <u>supra</u>, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

<u>DISCUSSION</u>

1.  <u>The ALJ failed to evaluate properly the medical evidence</u>.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725 (*citing* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion

by an examining physician or psychologist. <u>Lester</u>, <u>supra</u>, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." <u>Tonapetyan</u>, <u>supra</u>, 242 F.3d at 1149 (*citing* <u>Magallanes</u>, <u>supra</u>, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." <u>Van Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831); <u>see also</u> 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will consider the length and extent of the treatment relationship).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

    a. Dr. Bremer ("Dr. Bremer") and Dr. Krueger ("Dr. Krueger"), examining doctors.

Dr. Bremer examined plaintiff on January 18, 2007 (Tr. 242-47). Dr. Bremer indicated that he "conducted a clinical interview; examined mental status; and administered the following tests: WAIS-III (Wechsler Adult Intelligence Scale-3rd Edition), WMS-III (Wechsler Memory Scale-3rd Edition), WLAT-II (Wechsler Individual Achievement Test-2nd Edition), and CTT (Color Trails Test)" (Tr. 242).

Dr. Bremer observed that plaintiff "presented as fairly childlike" (Tr. 244). Dr. Bremer indicated that plaintiff had multiple speech difficulties (id.). Dr. Bremer observed that plaintiff had the persistence to work steadily for two hours without a break (id.). He noted results from the testing of plaintiff, including his performance in the fourteenth percentile in verbal comprehension and fifth percentile on working memory testing (Tr. 245). Dr. Bremer opined that plaintiff's "decidedly lower" academic skills than what would be expected given plaintiff's general learning ability, along with his educational history "supports diagnoses of Learning Disabilities in each of these areas" (Tr. 246). He diagnosed plaintiff with "reading disorder; mathematics disorder; disorder of written expression; learning disorder NOS [not otherwise specified] characterized by difficulty retaining verbally-presented material; [and,] phonological disorder" (Tr. 247). He opined that plaintiff was "severely learning disabled in reading, writing and arithmetic;" and, that jobs "requiring these skills even at the rudimentary level (reading job manuals, filling out work completion of mileage forms for example) would not be appropriate and would not be met with success" (id.).

Dr. Bremer further opined with certainty that plaintiff would require accommodations in a training and work setting, "including opportunities to practice what he has been shown" (id.). Finally, He opined that plaintiff's potential appearance of immaturity and occasional inappropriateness can lead to plaintiffs' frustration and emotional reactivity (id.).

The ALJ included the following in his discussion regarding the opinions of Dr. Bremer:

Additionally, Dr. Bremer provided a psychological opinion in January 2007 (internal citation to Exhibit 2F). Here, Dr. Bremer asserted that the claimant was 'severely disabled' and required 'accommodations in a training and work setting, including opportunities to practice what he has been shown' (internal citation to Exhibit 2F/6).

. . . .

Both the opinions of Dr. Bremer and Dr. Krueger are given little weight as they are inconsistent with the record as a whole, the opinion of a State Agency reviewing physician, Jan L. Lewis, Ph.D., and a medical expert, Ashok I. Khushalani.

(Tr. 26).

The Court notes that, contrary to the ALJ's discussion, Dr. Bremer did not opine that plaintiff was "severely disabled." Rather, he opined that plaintiff was "severely learning disabled in reading, writing and arithmetic" (see Tr. 247). In addition, although the state agency non-examining doctor and the non-examining medical expert offered relevant opinions, in order for the ALJ to reject Dr. Bremer's opinion as an examining doctor in favor of the opinion of the non-examining state agency doctor and medical expert, the ALJ was required to provide "specific, *legitimate* reasons that are supported by substantial evidence in the record." See Van Nguyen, supra, 100 F.3d at 1466.

The only other reason given by the ALJ to justify his failure to credit fully the opinion of Dr. Bremer was that the ALJ found it to be "inconsistent with the record as a whole" (Tr. 26). However, as the ALJ fails to specify a single inconsistency between the opinion of Dr. Bremer and the "record as a whole," this reason is not "specific" and does not provide support for the ALJ's failure to credit fully Dr. Bremer's opinion. See Van Nguyen, supra, 100 F.3d at 1466. Although defendant directs the Court to the ALJ's "10-page discussion," defendant fails to provide a single example of evidence from this ten

page discussion to support the ALJ's finding that Dr. Bremer's opinion was "inconsistent with the record as a whole" (see Tr. 26; see also Response, ECF No. 18, p. 11).

If an ALJ's discussion of the facts and conflicting evidence is sufficiently thorough and detailed to support a failure to credit the opinion of an examining physician, it should contain specific and legitimate reasons within the discussion for such failure. See Reddick, supra, 157 F.3d at 725. The ALJ failed to do so here. Therefore, this matter should be reversed and remanded to the Commissioner for further administrative proceedings.

Dr. Krueger examined plaintiff on March 19, 2008 and opined, among other things, that plaintiff often had trouble getting along with co-workers (Tr. 349); that plaintiff had poor insight and probably needed supported employment (see Tr. 350); that plaintiff failed to understand the counselor when he sought mental health treatment (id.); and, that plaintiff had poor reading ability, awareness, judgment and perseverance (id.).

The ALJ provided, in part, the identical reasons in support of his failure to credit fully Dr. Krueger's opinions as utilized to fail to credit fully Dr. Bremer's opinions (see Tr. 26). As with the opinion by Dr. Bremer, in order for the ALJ to reject Dr. Krueger's opinion as an examining doctor in favor of the opinion of the non-examining, reviewing state agency doctor and medical expert, the ALJ was required to provide "specific, legitimate reasons that are supported by substantial evidence in the record." See Van Nguyen, supra, 100 F.3d at 1466. Based on a review of the relevant record, it does not appear that the ALJ noted evidence in his discussion of the facts and conflicting evidence

that demonstrates that Dr. Krueger's opinions was "inconsistent with the record as a whole" (see Tr. 26).

Although the ALJ also found that Dr. Krueger's "assessment of moderate limitations translated to mild limitations under the language of the Listings," (Tr. 26), this finding, questioned by plaintiff, even if appropriate, does not provide adequate support for the ALJ's rejection of all of Dr. Krueger's opinions. For the reasons discussed and based on the relevant record, the Court finds that the opinions of Dr. Krueger should be evaluated anew following remand of this matter.

Defendant does not respond specifically to plaintiff's arguments regarding the medical evidence, but characterizes plaintiff's challenges as "essentially arguing for a more favorable interpretation of the medical evidence" (see Response, ECF No. 18, pp. 11-12). However, the Court concludes that the ALJ committed errors not only in his review of the opinions of Drs. Bremer and Krueger, but also in his review of other medical evidence regarding plaintiff's physical limitations and abilities.

For example, although the ALJ noted that plaintiff's left hand numbness improved after surgery, the ALJ does not appear to have provided any reason to discount the assessment of Dr. Rajesh G. Arakal, M.D. ("Dr. Arakal"), that plaintiff was suffering from chronic neck pain (see Tr. 17, 306; see also Tr. 251, 252). Although the ALJ found plaintiff's testimony to be less than fully credible, the doctor's opinion appears also to have been based on plaintiff's X-ray results and Dr. Arakal's examination of plaintiff (see Tr. 306; see also Tr. 251, 252).

In addition, Dr. Garrett W. Duckworth, Jr., M.D. ("Dr. Duckworth"), opined that plaintiff was limited to sedentary work (Tr. 342). The ALJ assigned only "minimal" weight to this opinion based on a lack of medical support; and, due to plaintiff's "extensive" activities of daily living, including having friends and family members that he socialized with and maintaining his household, including cooking, cleaning and washing (see Tr. 25). First, the Court notes that Dr. Duckworth indicated that he was relying on the medical support gleaned from plaintiff's laboratory results and his MRI scan (see Tr. 341). Dr. Duckworth also found that plaintiff suffered from a decreased range of motion in his neck (id.). Second, the fact that plaintiff had friends and family members that he socialized with, and the fact that plaintiff maintained his household by cooking, cleaning and washing do not provide adequate support for the ALJ's failure to credit fully the medical opinion of examining physician, Dr. Duckworth (see Tr. 25).

For the reasons discussed and based on the relevant record, the Court concludes that all of the medical evidence should be evaluated anew following remand of this matter. Plaintiff should be afforded a *de novo* hearing and should be allowed to present new evidence and arguments, as relevant to the appropriate period of time.

2. The ALJ failed to evaluate properly plaintiff's credibility and testimony.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999); Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not

"required to believe every allegation of disabling pain" or other non-exertional

impairment. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. §

423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some*

pain; many medical conditions produce pain not severe enough to preclude gainful

employment." <u>Fair</u>, <u>supra</u>, 885 F.2d at 603. The ALJ may "draw inferences logically

flowing from the evidence." <u>Sample</u>, <u>supra</u>,694 F.2d at 642 (*citing* <u>Beane v. Richardson</u>,

457 F.2d 758 (9th Cir. 1972); <u>Wade v. Harris</u>, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific,

cogent reasons." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).

In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must

specifically identify what testimony is credible and what evidence undermines the

claimant's complaints.'" <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting*

<u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)); <u>Reddick</u>,

<u>supra</u>, 157 F.3d at 722 (citations omitted); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir.

1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility

evaluation," including the claimant's reputation for truthfulness and inconsistencies in

testimony, and may also consider a claimant's daily activities, and "unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of

treatment." <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding

subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929;

<u>Smolen</u>, 80 F.3d at 1281 (*citing* <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)). First,

the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, supra, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities  . . . .  does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (*citing* Fair, supra, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities

warrant an adverse credibility determination. <u>Orn</u>, <u>supra</u>, 495 F.3d at 639 (*quoting* <u>Burch</u> <u>v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005)).

First, the Court notes that a determination of plaintiff's credibility relies on the assessment of the medical evidence and the Court already has determined that the ALJ failed to evaluate properly the medial evidence, <u>see supra</u>, section 1. <u>See</u> 20 C.F.R. § 404.1529(c). In addition, as the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 23), he could not discredit plaintiff's testimony as to the severity of his symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell</u>, <u>supra</u>, 947 F.2d at 343, 346-47.

Regarding activities of daily living, the ALJ here did not specify that plaintiff's activities were transferable to a work setting, therefore he was required to find that they contradicted plaintiff's other testimony in order to use plaintiff's daily activities to form the basis of an adverse credibility determination. <u>See Orn</u>, <u>supra</u>, 495 F.3d at 639. As noted by the ALJ, plaintiff testified that "although he is able to cook, clean, and do laundry, [] he is limited to simple tasks" (Tr. 22). The activities of daily living discussed by the ALJ when evaluating plaintiff's credibility include the following: playing games on his computer; socializing with friends; cooking; household chores; and, running errands (Tr. 24). On the basis of these activities of daily living, the ALJ found that plaintiff's "actual daily activities reveal a significantly greater physical and mental functional ability than alleged" (<u>id.</u>).

It appears that the ALJ improperly relies on plaintiff's activities of daily living to be inconsistent in general with the fact that plaintiff has alleged physical and mental limitations. In the absence of a specific finding that a claimant's daily activities of living are transferable to a work setting, such activities must contradict a claimant's "other testimony" in order to be "grounds for an adverse credibility finding." Orn, supra, 495 F.3d at 639. The finding by the ALJ that plaintiff's activities of daily living, such as household chores, using a computer and running errands, are inconsistent with the concept that plaintiff has alleged physical and mental limitations is not equivalent to a finding that they contradicted his other testimony. See id. Therefore, the ALJ's finding regarding plaintiff's activities of daily living provides little support for his adverse credibility determination. See id.

Although defendant argues that "[p]laintiff testified to a degree of incapacity incompatible with the activities in which he engaged," the Court notes that, like the ALJ, defendant fails to specify any testimony of plaintiff in which plaintiff testified that he suffered "a degree of incapacity" inconsistent with the activities of daily living specified by the ALJ (see Response, ECF No. 18, p. 7). In fact, defendant, like the ALJ, does not specify any testimony by plaintiff at all in support of the finding that plaintiff's testimony was contradicted by plaintiff's activities of daily living.

Finally, the ALJ relied on a lack of treatment by plaintiff for his mental impairments and relied on the fact that plaintiff took no medications for his impairments in support of his failure to credit fully plaintiff's testimony (Tr. 24-25). In this case, such reliance on both factors was improper.

Although it is often the case that a claimant's lack of treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because he or she wishes to remain disabled and receive benefits, or because he or she is not suffering from that severe of an impairment if not doing everything possible to remedy it. See SSR 96-7 1996 SSR LEXIS 4, at *21-*22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . . and there are no good reasons for this failure"); but see Nichols v. Califano, 556 F.2d 931, 932 (9th Cir. 1977) (even if a condition could be remedied by surgery, if the claimant's "actions were reasonable under the circumstances, then the district court's judgment upholding the [written decision by the ALJ] must be reversed"). However, a good reason can provide a valid excuse for not following prescribed treatment, such as that a treating family physician does not recommend the treatment, or that it is excessively painful or dangerous. 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22; Nichols, supra, 556 F.2d at 933.

When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." See Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is a questionable practice to chastise one with a mental impairment for

the exercise of poor judgment in seeking rehabilitation.'" Id. (*quoting* with approval,

Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from a mental illness, and the mentally ill person does not have the requisite insight into his condition, or otherwise does not have the ability to attend treatment, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. Here, Dr. Krueger indicated that although plaintiff attended multiple counseling sessions, he was unable to understand what the counselor was trying to say (see Tr. 350). He also expressed doubt that additional counseling would provide much help to plaintiff (id.).

In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4, at *22.

It is not clear if the ALJ considered whether or not plaintiff's mental impairments or his inability to understand his mental health counselor, explained, or explained in part, plaintiff's infrequent mental health visits. Therefore, it is not clear if the ALJ complied with SSR 96-7 when evaluating plaintiff's infrequent treatment. See id.

However, it is clear that the ALJ failed to comply with SSR 96-7 when he failed to credit plaintiff's testimony in part due to a lack of prescription medication without first considering whether or not plaintiff's alleged inability to pay for prescription medication

provided a sufficient explanation. <u>See</u> <u>id.</u> Here, plaintiff testified that although he takes aspirin when his pain is bad, he is unable to take prescription medications as he cannot afford them (Tr. 45). The ALJ failed to consider this alleged fact before discrediting plaintiff's testimony, committing error. <u>See</u> SSR 96-7 1996 SSR LEXIS 4, at *22. The Ninth Circuit specifically has "proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it." <u>Regennitter v. Comm'r SSA</u>, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted).

For the stated reasons and based on the relevant record, the Court concludes that the ALJ failed to provide clear and convincing evidence for his failure to credit fully plaintiff's testimony. <u>See</u> <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1283-84; <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722. This is an independent reason that this matter should be reversed and remanded to the Commissioner for further consideration.

3. <u>The lay evidence and plaintiff's residual functional capacity should be evaluated anew following remand of this matter</u>.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," <u>see</u> 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and

"other sources" such as nurse practitioners and chiropractors, who are considered other

medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc.

Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d),

(d)(3)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An

ALJ may disregard opinion evidence provided by "other sources," characterized by the

Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for

doing so." Turner, supra, 613 F.3d at 1224 (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th

Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is

because "[i]n determining whether a claimant is disabled, an ALJ must consider lay

witness testimony concerning a claimant's ability to work." Stout v. Commissioner,

Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing Dodrill v.

Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

　　　　Recently, the Ninth Circuit characterized lay witness testimony as "competent

evidence," again concluding that in order for such evidence to be disregarded, "the ALJ

must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d

1113, 1115 (9th Cir. 2009) (quoting Van Nguyen, supra, 100 F.3d at 1467). In this recent

Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not

supported by medical evidence in the record." Bruce, supra, 557 F.3d at 1116 (citing

Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)). Testimony from "other non-

medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4),

may not be disregarded simply because of their relationship to the claimant or because of

any potential financial interest in the claimant's disability benefits. <u>Valentine v. Comm'r SSA</u>, 574 F.3d 685, 694 (9th Cir. 2009). In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, <u>supra</u>, 454 F.3d at 1056 (reviewing cases).

Plaintiff's stepmother, Ms. Joan Wilson ("Ms. Wilson") completed a function report regarding plaintiff's abilities and limitations in September, 2007 (Tr. 215-222). She provided relevant opinions, such as that plaintiff could not sit or stand for long periods (Tr. 219); had problems getting along with other people and some authority figures (Tr. 220); had a learning disability (<u>id.</u>); needed rest after walking two or three blocks (<u>id.</u>); did not finish what he started (<u>id.</u>); had difficulty reading and sometimes required explanations (<u>id.</u>); had been fired from almost all of his jobs for difficulties getting along with others and failure to follow instructions (Tr. 221); and, had difficulties handling change (<u>id.</u>).

The ALJ included the following in his written decision:

> Ms. Wilson endorsed that the claimant had no limitations in ability to maintain personal care and hygiene (internal citation to Exhibit 8E/2). Also, she stated that the claimant was able to prepare meals for himself on a daily basis and clean his home (internal citation to Exhibit 8E/3). Further, she contended that the claimant engaged in social activities and was able to drive by himself (internal citation to Exhibit 8E/4). Notably, Ms. Wilson asserted that the claimant was able to lift up to 10 pounds and followed spoken instructions 'very well' (internal citation to Exhibit 8E/6). Ms. Wilson's accounts of the claimant's actual daily activities also demonstrate a significantly greater physical and mental functional ability than alleged.

(Tr. 24)

The ALJ appears to have construed the opinion of Ms. Wilson in favor of finding that plaintiff did not suffer any functional limitation in his ability to work by failing to discuss any of her opinions regarding functional limitations and by failing to provide explicit reasons to discount said opinions. The Court finds that the ALJ's characterization of the lay opinion offered by Ms. Wilson is not supported by substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750.

Although defendant suggests that the ALJ noted germane reasons to discount Ms. Wilson's opinion even though he did not link those reasons to his discussion of Ms. Wilson's opinion (see Response, ECF No. 18, pp. 12-13 (*citing* Lewis, supra, 236 F.3d at 512)), the Court already has found that the ALJ erred in his review of the medical evidence and plaintiff's credibility, see supra, sections 1 and 2. Therefore, in this matter, the ALJ's review of the facts and evidence does not provide germane reasons to fail to credit fully the opinions of Ms. Wilson regarding plaintiff's ability to work.

For the reasons stated and based on the relevant record, the lay testimony provided by Ms. Wilson should be evaluated anew following remand of this matter. In addition, based on a review of the relevant record and for the reasons discussed, the five-step sequential disability evaluation process should be completed anew following remand of this matter, including determination of plaintiff's residual functional capacity.

CONCLUSION

The ALJ failed to provide specific and legitimate reasons in support of his failure to credit fully the opinions of examining doctors, in favor of opinions from non-examining medical consultants. The ALJ also failed to provide clear and convincing reasons to discount plaintiff's credibility and testimony.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 13**,** 2012, as noted in the caption.

Dated this 22nd day of March, 2012.

J. Richard Creatura
United States Magistrate Judge